# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAKE CHARLES DIVISION

| | |
|---|---|
| MARION J. BEASON | CIVIL ACTION NO. 05-0589-LC |
| VS. | SECTION P |
| TIM WILKERSON, WARDEN | JUDGE MINALDI |
| | MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of *habeas corpus* (28 U.S.C. § 2254) filed on April 4, 2005, by *pro se* petitioner Marion J. Beason. Petitioner is an inmate in the custody of the Louisiana Department of Public Safety and Corrections. He is incarcerated at the Winn Correctional Center, Winnfield, Louisiana, where he is serving a 35 year hard labor sentence imposed following his attempted aggravated rape conviction in Louisiana's Thirtieth Judicial District Court.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.

## STATEMENT OF THE CASE

The petition and its accompanying exhibits, and the additional pleading and exhibits submitted by the petitioner on June 13, 2005, along with the published jurisprudence of the State of Louisiana establish the following:

### I. The Plea

Sometime prior to September 8, 2000, petitioner was charged with one count of

aggravated rape and one count of molestation of a juvenile.[1]  On September 8, 2000, petitioner's attorney advised him that the District Attorney had offered a plea agreement; the State agreed to dismiss the molestation charge, and permit petitioner to plead guilty to one count of attempted aggravated rape.  Under the terms of the agreement, there would be no sentencing recommendation from the State and <u>the court would be free to impose a sentence of up to fifty years at hard labor</u>.  [See Exhibit, Correspondence from S. Christie Smith, IV to petitioner, 9/8/2000].

On September 8, 2000, petitioner pled guilty to attempted aggravated rape.[2] [Doc. 6, Exhibit, Plea Transcript].  On February 1, 2001, he was sentenced to serve 35 years at hard labor. [Doc. 1, paragraph 3; Doc. 6, Exhibits, Sentencing Transcript; Court Minutes].

On April 15, 2001, petitioner wrote a letter to Judge Clark and provided copies to the

---

[1] According to the sentencing transcript, petitioner had previously pled guilty to one count of attempted aggravated rape and one count of aggravated incest. On appeal, the Third Circuit Court of Appeals reversed the conviction because the offense of aggravated incest had been enacted after the date that the offense was alleged to have occurred. Since the petitioner pled guilty pursuant to a plea agreement, the Court vacated both convictions and sentences, and remanded with instructions that the petitioner be given the option to plead guilty to attempted aggravated rape, or, to go to trial on that charge. [Doc. 6, Exhibits, Sentencing Transcript, p. 2].

[2] Prior to accepting petitioner's plea, the trial court advised, "Now, the penalty provision that would apply in this case is as follows: Under the provisions of the ... aggravated rape statute that's punishment by life imprisonment at hard labor. For an attempt, therefore, since that sentence provision would apply for the main charge would be under Paragraph D(1) of Section 27, it says if the offense so attempted is punishable by death or life imprisonment he shall be imprisoned at hard labor for not less than ten, nor more than fifty years without benefit of parole, probation, or suspension of sentence. That's what would apply in this case. Do you understand that, sir.?" Petitioner responded, "Yes, sir." The court then advised, "Not less than ten, nor more than fifty years at hard labor without benefit of probation, parole, or suspension. Any questions about the offense, or, about the penalty that you would expose yourself to?" To which petitioner responded, "No, sir." The court also noted, "Now, the plea agreement, as I understand it, is as follows: You would tender a plea to attempted aggravated rape, and, the State agrees to accept that tendered plea. Further, the State agrees to dismiss charges in another bill of information 55,964 – or, the same bill of information, excuse me, the other counts, and, also agrees to dismiss true bill 55,989 which was indictment by the Grand Jury. Is that your understanding of what part of this deal is?" Petitioner again responded in the affirmative. The court then concluded, "It's my understanding, as well, and, I've discussed this with counsel in chambers that based on the Third Circuit Court of Appeals ruling there is, in fact, a thirty-five year cap on the sentence that I could impose on you because of the sentence that was imposed previously. Is that your understanding?" To which petitioner replied, "Yes, sir." [Doc. 6, Exhibits, Plea Colloquy Transcript].

2

District Attorney and his trial attorney. Therein, he proclaimed his innocence and stated, "While awaiting trial, my defense counsel continually threatened me with a life sentence. I was unaware of my rights and unaccustomed to the law. I believed everything defense counsel told me. I would not have taken a plea agreement if counsel would not have been so vehement that I was going to receive a life sentence unless I did plea." [Doc. 6, Exhibits, Letter, April 15, 2001].

## II. Direct Appeal

### a. Third Circuit Court of Appeal

Petitioner appealed and argued a single assignment of error – excessiveness of sentence. [Doc. 1, paragraph 6; see also Doc. 6, Exhibits, Original Brief of Appellant]. On February 6, 2002, his sentence was affirmed by the Third Circuit Court of Appeals in an unpublished opinion. [Doc. 1, paragraph 6(a) and (b); see also *State v. Marion Beason*, 2001-00256 (La. App. 3d Cir. 2/6/2002), 812 So.2d 155; see also Doc. 6, Exhibit, Slip Opinion of the Third Circuit].

### b. Supreme Court

Petitioner did not seek further direct review in the Louisiana Supreme Court. [Doc. 1, paragraph 6(c)).[3]

---

[3] This fact is corroborated by a review of the published jurisprudence of the State of Louisiana which reveals only two published writ denials indexed under petitioner's name. Neither reference the docket number of petitioner's direct appeal to the Third Circuit Court of Appeals. See *State v. Marion J. Beason*, 2003-2577 (La. 9/24/2004), 882 So.2d 1161, which denies writs taken from a Third Circuit decision bearing docket number KH 02-1233 and *State ex rel. Marion J. Beason v. State*, 2004-1556 (La. 9/24/2004), 882 So.2d 1149, which denies writs taken from a Third Circuit decision bearing docket number 04-00367.

Nevertheless, petitioner produced the following exhibits: (1) A letter from petitioner's court appointed appellate counsel dated February 8, 2002, which advised petitioner that his conviction and sentence had been affirmed by the Third Circuit Court of Appeals on February 6, 2002. The letter further advised petitioner that counsel would no longer represent petitioner. The letter further advised petitioner that he had a period of thirty days from February 6 within which to seek review in the Louisiana Supreme Court. [Doc. 6, Exhibits, Letter, 2/8/2002, Louisiana Appellate Project]; (2) A Motion for Extension of Time directed to the Louisiana Supreme Court and requesting additional time to perfect petitioner's writ application. (The motion appears to be dated March 8, 2002.)[Doc. 6, Exhibits, Motion for Extension of Time]; (3) Petitioner's application for Supervisory Writ of Review

### III. Motion to Correct Illegal Sentence/Application for Post-Conviction Relief

### a. Thirtieth Judicial District Court

On June 26, 2002, petitioner filed a pleading styled "Motion to Correct Illegal Sentence."

Therein, he argued that his "guilty plea [was] involuntary . . . [because it] was entered based on

erroneous advice of counsel regarding parole eligibility." He also claimed that counsel's "lack of

preparation, failure to determine what evidence state planned to use, his failure to review

material" resulted in petitioner receiving a "harsher sentence." Finally, he claimed that counsel

"guaranteed defendant he would be able to parole in 1/3, 11.8 years of his sentence. . . ."

Petitioner claimed that due to an ear infection, he was unable to hear the trial court's explanation

and therefore was unaware that he was pleading to an offense without benefit of parole.

Petitioner also objected to the use of "hearsay" testimony of the minor child victim's mother at

sentencing. Petitioner claimed that his attorney added provisions to the "plea contract" after the

plea had been entered. Finally, petitioner claimed that had he known that he would be required to

serve at least twenty-five years before becoming eligible for parole, he would not have entered

the plea. [See Doc. 6, Exhibits, "Motion to Correct Illegal Sentence"].

On August 29, 2002, the Motion was denied by the trial court. [Doc. 6, Exhibits, Ruling

on Motion to Correct Illegal Sentence.] In ruling on this motion, the trial court stated, "[t]he

court thoroughly reviewed the record and attachments to the petition. In particular, the letter of

---

in the Supreme Court dated April 16, 2002. [Doc. 6, Exhibits, Supervisory Writ]; (4) Letter from the Supreme Court
Central Staff to Petitioner dated April 25, 2002. The letter advised petitioner, "We have received your motion for an
extension of time and are returning your papers. You may have 60 days from the date of this letter to file your
application. We cannot file your motion and accompanying papers as a writ on your appeal as they are submitted
more than 30 days after your conviction was affirmed." (emphasis supplied) [Doc. 6, Exhibits, Letter, April 25,
2002]. Petitioner also provided a copy of the Administrative Remedies Procedure (ARP) Grievance he submitted to
prison authorities on February 27, 2002. In this ARP, petitioner claimed that he was denied access to the prison law
library on February 1, 6, 13, 16, 20, and 27, 2002. [Doc. 6, Exhibits ARP, 2/27/02].

September 8, 2000, from counsel clearly indicates that Mr. Beason was advised that his parole eligibility was subject to the 85% rule. After having been made aware of this, mover entered his plea on the same day. Thus, he pled guilty with full knowledge of his parole eligibility under the statute."

### b. Writ of Review in the Third Circuit

On October 15, 2002, petitioner sought review in the Third Circuit Court of Appeals. He formally designated one Assignment of Error, "District Court erred in not conducting a hearing to determine whether the plea should be vacated, based on defendant's assertion that plea was not voluntarily [sic] but induced being that he was misled by counsel concerning the applicable parole eligibility date." Petitioner claimed that the written plea contract had been altered by his attorney after the plea. [Doc. 6, Exhibits, Writ Application, Third Circuit Court of Appeal, Docket Number KH-02-1233]. The Third Circuit denied relief on April 24, 2003. [See Doc. 6, Exhibits, Writ Denial, *State v. Beason*, No. KH-02-01233 (La. App. 3d Cir. 4/24/2003)]. In denying relief to the petitioner, the Third Circuit Court of Appeal noted, "Relator asserts that the trial court erred in failing to conduct a hearing to determine whether his guilty plea was knowing or voluntary based on the alteration of a document, which discussed Relator's plea agreement. No hearing was necessary to determine that the alteration to the document did not change the contents of the plea agreement. La. R.S.15:574.4(B); *State v. Readoux,* 614 So.2d 175, 176 (La. App. 3d Cir. 1993).[4] Accordingly, Relator's writ application is denied."

---

[4] In *Readoux*, the court held, "A guilty plea is invalid, or constitutionally infirm, when a defendant is induced to enter a plea of guilty by a plea bargain agreement, or what he reasonably or justifiably believes was a plea bargain agreement, and the terms of the bargain are not satisfied. *State v. Jones*, 546 So.2d 1343, 1346 (La.App. 3d Cir.1989); *State v. Taylor*, 535 So.2d 1229, 1230 (La.App. 3d Cir.1988), quoting *State v. Dixon*, 449 So.2d 463, 464 (La.1984). It is well settled that if a defendant's misunderstanding is not induced by or attributed to representations made by the district attorney or the trial court, there is no ground for invalidating the guilty plea. *State v. Malmay*,

## c. Writ of Review in the Louisiana Supreme Court

On May 21, 2003, petitioner requested an extension of the date upon which his application for writs was due. On June 9, 2003, the Supreme Court granted petitioner's motion giving him a period of 60 days from June 9 within which to seek further review in the Louisiana Supreme Court. [Doc. 6, Exhibits, Letter from Louisiana Supreme Court to petitioner, 6/9/2003].

On an unspecified date, petitioner sought further review in the Supreme Court. In his undated writ application petitioner argued that his attorney "continually told the defendant and stated in contract that the defendant would get the death penalty if he didn't accept plea and sign contract . . . . The defendant being scared and worried and didn't want to be put to death couldn't make a clear and knowing choice, thinking he was going to die if he didn't sign the contract. Defendant is now finding the attorney erroneously informed the defendant concerning the penalty provision for attempted aggravated rape." Petitioner also argued, "[p]lea contract was negotiated with judge by attorney in chambers." He argued that the District Court was incorrect when it denied parole or probation. He argued that the Third Circuit "made new contract for defendant." He argued that he was "misled by the court" and that his "attorney told him not to say anything but 'yes' at the plea hearing . . . ." He also argued that the attorney "erroneously informed defendant concerning the applicable penalty provision for parole . . . then to cover himself changed the contract without defendant's knowledge." Petitioner claimed that the Third Circuit made a new contract when it referred to Subsection B of La. R.S.15:574.4. [Doc. 6,

---

548 So.2d 71, 73 (La.App. 3d Cir.1989); *State v. Jones*, *supra*.

It is also well settled that a misunderstanding between a defendant and counsel for defendant does not have the same implication as a breached plea bargain agreement, and this misunderstanding does not render the guilty plea invalid. *State v. Lockwood*, 399 So.2d 190 (La.1981); *State v. Johnson*, 533 So.2d 1288, 1292 (La.App. 3d Cir.1988), *writ denied*, 563 So.2d 873 (La.1990)." [emphasis supplied].

Exhibits, Supreme Court Writ Application]. On September 24, 2004, the Supreme Court denied relief. [Doc. 1, paragraph 7(b); *State v. Marion J. Beason*, 2003-2577 (La. 9/24/2004), 882 So.2d 1161; Doc. 6, Exhibits, Writ Denial].

## IV. Second Application for Post-Conviction Relief

### a. Thirtieth Judicial District Court

While his writ application related to his first post-conviction relief proceeding was pending before the Louisiana Supreme Court, petitioner filed a second Application for Post-Conviction Relief in the Thirtieth Judicial District Court on January 29, 2004. In that pleading, petitioner raised the following claims for relief: Claim I – "Defendant had built-in conflict of interest in his preceedings [sic] due to co-counsel and Judge being law partners in the same firm"; Claim II – "Failure of Trial Judge to recuse himself, and there-by [sic] created a 'conflict of interest' for the Defendant"; and, Claim III – "Defendant was denied the right to make a statement, or present any information in mitigation of his sentence." [Doc. 6, Exhibits, Application for Post-Conviction Relief]. The Application was denied on February 9, 2004. The trial court found that petitioner's claims were factually without merit. [Doc. 6, Exhibits, Ruling of Court on Application for Post-Conviction Relief].

### b. Third Circuit Court of Appeals

Petitioner sought further review in the Third Circuit Court of Appeals. He made a single formal assignment of error, "The district court never addressed the defendant personally and determine whether the defendant wish to make a statement and to present any information in mitigation of sentence. District court denied the defendant the right of 'allocution.'" In his memorandum in support of application, petitioner also argued, "After negotiation with the

prosecutor the defence [sic] attorney present a contract for the defendant to sign. Defense

attorney and the prosecutor deliberately left the contract off the record." He further claimed,

"Defendant was guaranteed if he would plead guilty he would only have to serve (1/3) 11.3 years.

. . . Defense attorney change the contract before sending a copy to Mr. Beason..." [Doc. 6,

Exhibits, Writ Application]. The Third Circuit denied relief on April 30, 2004. [Doc. 6,

Exhibits, Writ Denial, *State of Louisiana v. Marion J. Beason*, No. KH-04-00367 (La. App. 3d

Cir. 4/30/2004)]. In its ruling, the Third Circuit stated that "Relator's invalid guilty plea claim is

not properly before this court as he did not first present the claim to the trial court and obtain a

ruling thereon. In addition, Relator's sentencing claim is not reviewable by application for post-

conviction relief. See *State ex rel. Melinie v. State*, 93-1380 (La. 1/12/96), 665 So.2d 1172."

### c. Louisiana Supreme Court

On June 22, 2004, petitioner sought further review in the Louisiana Supreme Court. In his

writ application before the Louisiana Supreme Court, petitioner argued a single claim, "District

Court never addressed the defendant personally and determine if the defendant wishes to make a

statement and present any information in mitigation of sentence." [Doc. 6, Exhibits, Writ

Application, La. Supreme Court]. That court denied relief on September 24, 2004. [Doc. 1,

Paragraph 7(c); *State ex rel. Marion J. Beason v. State*, 2004-1556 (La. 9/24/2004), 882 So.2d

1149].

### V. *Habeas Corpus*

Petitioner's *habeas* petition was signed on March 18, 2005. It was filed on April 4, 2005.

In the petition, petitioner argues three claims for relief: (1) "Modification of Instrument" in

which petitioner claims that the written plea agreement was modified without his consent after

the entry of his guilty plea; (2) "Ineffective Assistance of Counsel" in which petitioner argues that he was incorrectly advised by his attorney concerning his eligibility for "good time" credits and his eligibility for parole; and (3) "Excessiveness of Sentence." [Doc. 1].

On May 11, 2005, the undersigned authored a Memorandum Order which observed, among other things, that petitioner's excessive sentence claim appeared unexhausted yet was probably procedurally defaulted. Petitioner was directed to amend his pleadings to cure this and other defects. [Doc. 5]. On June 13, 2005, petitioner filed a Motion to Amend and Exhibits. Petitioner argued facts to support his "cause and prejudice" claim with respect to his now defaulted sentencing claim. Along with the exhibits, petitioner also filed an Amended Complaint which was docketed as an exhibit. In his amended complaint, petitioner argued three additional claims: Claim One – The denial of the right of allocution[5]; Claim Two – Failure of the trial judge to recuse himself due to a conflict of interest; and Claim Three – "Built-in" conflict of interest.[6] [See Doc. 6, Exhibits, Petitioner's Amended *Habeas Corpus* Petition].

On June 13, 2005 petitioner filed a Motion to Stay. In support of his motion, petitioner claimed that his Motion was not "taken for purpose of delay, but to allow issues to be exhausted in La. Supreme Court." He also asked the court to stay "the execution of the judgment, since such stay is necessary to prevent a contested issue from becoming bar[r]ed. Without such a stay, the sentence will have been served and petitioner will be denied an opportunity to have such

---

[5] Petitioner argued that he was denied the right to address the court prior to the imposition of sentence. According to petitioner, he wanted to add information and not rebut any previous statements made at the sentencing hearing. Further, he wished to provide evidence in mitigation. [Doc. 6, Exhibits, Amended Petition].

[6] In Claims Two and Three, petitioner argues that his trial counsel, Christie Smith, IV employed his father, Chris Smith, III as co-counsel. He further alleged that prior to his election as a judge, Judge Clark, the trial court judge, had been a law partner of Smith the elder. Petitioner claims that this was a "built in" conflict of interest and that Judge Clark should have recused himself. [Doc. 6, Exhibits, Amended Petition].

contested issues reviewed by this court." [Doc. 7].

**LAW AND ANALYSIS**

## I.  Exhaustion of State Court Remedies (in General)

Section 28 U.S.C. § 2254 states, as relevant to this proceeding:

> (b)(1) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
> (A) the applicant has exhausted the remedies available in the courts of the State; or
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>        *       *       *
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.
> 28 U.S.C. §2254.

The exhaustion doctrine set forth in section 2254 requires that the state courts be given the initial opportunity to address and, if necessary, correct alleged deprivations of federal constitutional rights in state cases. *Castille v. Peoples*, 489 U.S. 346, 349, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989). The doctrine serves "to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982).  Federal and state courts are equally obliged to guard and protect rights secured by the Constitution.  Therefore, it would be inappropriate for a federal district court to upset a state court conviction without first giving the state court the opportunity to correct the alleged constitutional violation.

To have exhausted his state remedies, a federal *habeas* petitioner must have fairly

presented the substance of his federal constitutional claims to the state courts. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir.1997), *cert. denied*, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998). Exhaustion requires that any federal constitutional claim presented to the state courts be supported by the same factual allegations and legal theories upon which the petitioner bases his federal claims. *Picard v. Connor*, 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). In addition, a federal *habeas* petitioner must fairly present his constitutional claim to the highest state court. *Skelton v. Whitley*, 950 F.2d 1037, 1041 (5th Cir.), *cert. denied sub nom*; *Skelton v. Smith*, 506 U.S. 833, 113 S.Ct. 102, 121 L.Ed.2d 61 (1992); *Richardson v. Procunier*, 762 F.2d 429, 431 (5th Cir.1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir.1982), *cert. denied*, 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983). In Louisiana, the highest state court is the Louisiana Supreme Court.

### A. Claims in Original Habeas Petition
### (Modification of Instrument; Ineffective Assistance of Counsel; Excessive Sentence)

### 1. Claim One: Modification of Instrument

The first claim raised by petitioner in his original federal *habeas corpus* petition is that the written plea agreement was modified without his consent after the entry of his guilty plea. This claim was raised as follows in petitioner's Motion to Correct an Illegal Sentence, "After guilty plea hearing counsel told the defendant he would copy contract and bring the defendant a copy at the parish jail. Counsel add [sic] another sentence to contract, in pen, without the defendant knowing, which the defendant has no understanding of, which makes it more confussing [sic] to defendant." [Doc. 6, Exhibit, Motion to Correct Illegal Sentence, p. 11]. This claim was not raised as a formal claim but was raised as a factual allegation in support of

petitioner's subsequent writ application to the Third Circuit Court of Appeals, "In this instant case, defendant was given, by his attorney, a typed plea-agreement contract to sign as according to the facts of the deal that counsel previously wrote on back of his business card. Therefore, defendant had every reason to rely on such deal. However, when counsel (hand wrote) a change in the contract concerning a (52%) change in parole eligibility [33% to 85%], after sentence was imposed, the plea became deprived of the character of a voluntary act and should be void." [Doc. 6, Exhibits, Writ Application, Third Circuit, at p. 2]. Petitioner also raised the claim as a factual allegation in his writ application to the Louisiana Supreme Court, "The defendants attorney, Mr. Smith, erroneously informed defendant concerning the applicable penalty provision, for parole . . . . Then to cover himself changed the contract without the defendants knowledge." [Doc. 6, Exhibits, Supreme Court Writ Application at p. 4]. Based on the foregoing, it appears that petitioner has successfully exhausted Claim One of the Original Petition for *Habeas Corpus*.

## 2. Claim Two: Ineffective Assistance of Counsel

In his second claim for relief, petitioner alleges that his attorney provided ineffective assistance of counsel because he informed petitioner that he would be eligible for "good time" parole and regular parole following his guilty plea to one count of attempted aggravated rape. Petitioner raised an ineffective assistance of counsel claim in his Motion to Correct an Illegal Sentence. Among other things, petitioner suggested that counsel was ineffective because, "Counsel assured defendant he had initiated the plea agreement and negotiated the terms to plea guilty but 'only' in return for government dropping of other charges and allowing parole, probation." [Doc. 6, Exhibits, Motion to Correct Illegal Sentence, p. 6]. While petitioner did not specifically argue ineffective assistance of counsel in his writ application to the Third Circuit

Court of Appeals, he did allege facts suggesting such a claim. [See Doc. 5, Exhibits, Writ Application, Third Circuit Court of Appeals].  Likewise, in his application for writs in the Supreme Court, petitioner made no specific claim for ineffective assistance of counsel, but he did argue that his attorney, "...erroneously informed defendant concerning the applicable penalty provision for parole...."

A claim is "fairly presented" to the state courts if there has been, (1) reliance on pertinent federal cases employing relevant constitutional analysis, see *Gartrell v. Lynaugh*, 833 F.2d 527, 529 (5th Cir.1987); *Williams v. Lord*, 996 F.2d 1481, 1483 (2d Cir.1993); (2) assertion of the claim in terms sufficiently particular as to "call to mind" a specific right protected by the Constitution, see *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231-33 (3d Cir.1992); or (3) allegations of a pattern of facts that is well within the mainstream of constitutional litigation, see *United States ex rel. Sullivan v. Fairman*, 731 F.2d 450, 454 n. 8 (7th Cir.1984).  "For a claim to have been 'fairly presented' to a state court to fulfill the exhaustion requirement, the applicant 'need not spell out each syllable of the claim before the state court.'" *Fisher v. State of Texas*, 169 F.3d 295, 303 (5th Cir.1999)(quoting *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir.1998)).   Based on the foregoing, it appears that petitioner has successfully exhausted Claim Two of the Original Petition for *Habeas Corpus*.

### 3. Claim Three:  Excessive Sentence

In his third claim for relief, petitioner argues that his sentence is excessive. He claims that the trial court failed to take into account the fact that petitioner accepted responsibility for the crime and showed remorse, that the victim did not need medical or psychological counseling, that petitioner had been gainfully employed and had only one misdemeanor on his record. This

claim was raised on direct appeal, however, as shown above, petitioner did not obtain review of this issue in the Louisiana Supreme Court. Therefore, it is clear that the Louisiana Supreme Court has not yet had an opportunity to review and determine the merits of petitioner's excessiveness of sentence claim, and it remains unexhausted.

In the Memorandum Order of May 11, 2005, the undersigned noted that petitioner's excessive sentence claim was unexhausted. However, the court further noted that the excessiveness of sentence claim was "technically exhausted" since petitioner would be prohibited from raising this claim in the state courts. [Doc. 5]. Under Louisiana law, petitioner could not urge this claim by filing another application for post-conviction relief. See *State ex rel. Melinie v. State*, 93-1380 (La. 1/12/96), 665 So.2d 1172, *reh'g denied*, 667 So.2d 1043 (La.1996). In *Melinie*, the Louisiana Supreme Court established that Article 930.3 sets out the exclusive grounds for granting post-conviction relief and does not permit review of sentencing errors post-conviction. 665 So.2d 1172 (La.1996). Even if he could raise this claim in a post-conviction motion, review of the claim would be barred by the two-year limitations period provided by LSA C.Cr.P. art. 930.8. He clearly could not seek Supreme Court review on direct appeal because the limitations period provided by Supreme Court Rule X §5(a) have also expired.

As noted in the Memorandum Order, petitioner's excessiveness of sentence claim is thus "technically defaulted" but now "procedurally barred." In order to obtain federal *habeas corpus* review of this now procedurally defaulted claim, petitioner must demonstrate "cause and prejudice" or "actual innocence." See *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553-54, 115 L.Ed.2d 640 (1991) ("[I]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule,

federal *habeas* review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750-51).

As shown above, petitioner did not timely perfect his application for writs to the Louisiana Supreme Court on direct appeal. The pleadings filed in response to the Memorandum Order of May 11, 2005, suggest that the "cause" for this default was due to alleged inadequacies of the prison law library and/or his inability to use the library on February 13, 15, 20, 21, and 27, 2002. [See Doc. 6, Exhibits, ARP, 2/27/2002]. Assuming for the sake of argument that petitioner's exhibits demonstrate cause for his default, it is manifestly clear that he has not, nor can he show prejudice resulting from his failure to timely file his petition for *certiorari* in Louisiana's Supreme Court. This is so because under Louisiana law, he was not entitled to seek review of the sentence which was imposed in accordance with a plea agreement. LSA C.Cr.P. art 881.2(B)(2) provides, "The defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea." This provision applies both to agreed upon sentences and agreed upon "ceilings," "ranges," or "caps." *State v. Young*, 96-0195 (La.10/15/96), 680 So.2d 1171; *State v. Rice*, 26,478 (La.App.2d Cir.12/07/94), 648 So.2d 426, *writ denied*, 95-0431 (La.06/16/95), 655 So.2d 340. As shown above, petitioner pled guilty pursuant to a plea agreement with a sentence "cap" of thirty-five years.[7] In other words, even if petitioner would have timely filed his writ application, it is

_____

[7] The court outlined the terms of the plea agreement and sentence cap: "Now, the plea agreement, as I understand it, is as follows: You would tender a plea to attempted aggravated rape, and, the State agrees to accept that tendered plea. Further, the State agrees to dismiss charges in another bill of information 55,964 – or, the same bill of information, excuse me, the other counts, and, also agrees to dismiss true bill 55,989 which was indictment by the Grand Jury. Is that your understanding of what part of this deal is?" Petitioner again responded in the affirmative. The court then concluded, "It's my understanding, as well, and, I've discussed this with counsel in chambers that

15

extremely unlikely that the Louisiana Supreme Court would have granted relief given the nature of the plea agreement.

Finally, petitioner has provided no evidence of "actual innocence" such as to warrant review of his defaulted claim. The only evidence he submitted is his April 15, 2001, letter to Judge Clark of the Thirtieth Judicial District Court. [Doc. 6, Exhibits, Letter, 4/15/2001]. Therein, he claimed not to have committed the offense in question, however, the facts alleged in this self-serving and unsworn document are belied by petitioner's admission of guilt in his present habeas corpus petition. [See Doc. 1, Exhibit "B" – "Ground Three Excessive Sentence" Petitioner's argument in support of his claim of excessive sentence includes the following statement, "Court never considered he [petitioner] showed remorse and pled guilty."]

In short, the undersigned concludes that petitioner has failed to exhaust his claim of excessiveness of sentence. Further, the claim, though now "technically exhausted" would be the object of a procedural default should petitioner attempt to exhaust it in the courts of Louisiana. Finally, the undersigned concludes that petitioner, to the extent that he has shown cause, has failed to demonstrate any prejudice resulting from the default.

### B. Claims in Amended Habeas Petition
### (Allocution, Recusal, Conflict of Interest)

Petitioner raised these three claims in his Application for Post-Conviction Relief filed in January, 2004. [Doc. 6, Exhibits, Application for Post-Conviction Relief, January, 2004]. The procedural history recounted above indicates that petitioner has exhausted Claim One of the

---

based on the Third Circuit Court of Appeals ruling there is, in fact, a thirty-five year cap on the sentence that I could impose on you because of the sentence that was imposed previously. Is that your understanding?" To which petitioner replied, "Yes, sir." [Doc. 6, Exhibits, Plea Colloquy Transcript].

Amended Petition (allocution) by presenting this claim in his writ applications before the Third Circuit Court of Appeals and the Louisiana Supreme Court [Doc. 6, Exhibits, Application for Writ of Review; Application for Writ of *Certiorari*]. However, Claims Two and Three (recusal and conflict of interest) remain unexhausted.

As shown above, petitioner clearly did not argue his conflict of interests claims in either the Third Circuit Court of Appeals or the Louisiana Supreme Court. These claims are therefore unexhausted. Further, as with petitioner's excessiveness of sentence claim, these claims are now "technically exhausted" because petitioner would be barred from raising these claims by the two year limitations period provided by LSA C.Cr.P. art. 930.8. As shown above, petitioner's judgment of conviction became final shortly after February, 2002, when the Third Circuit Court of Appeals affirmed petitioner's conviction and sentence on direct appeal. *State v. Marion Beason*, 2001-00256 (La. App. 3d Cir. 2/6/2002), 812 So.2d 155.

Petitioner may argue that the limitations period provided by art. 930.8 should be reckoned not from the date upon which his judgment became final, but rather, the date upon which he discovered the evidence of the alleged conflict of interest. See LSA C.Cr.P. art. 930.8(A)(1). However, even should petitioner be successful in surmounting the limitations bar, his claim would be subject to dismissal as repetitive under the provisions of LSA C.Cr.P. art. 930.4(D). In short, these claims are "technically exhausted" but are now, for all intents and purposes, procedurally defaulted. Petitioner has provided no evidence or argument to establish cause or prejudice for this default and therefore, these claims must be dismissed.

### C. Motion for Stay [doc. 7]

In a pleading filed June 13, 2005, petitioner asked the court to "stay" this habeas

proceeding. In support of this request, petitioner noted the presence of "substantive issues for determination." He claimed that his request for a stay "is neither frivolous nor is taken for purpose of delay, but to allow issues to be exhausted in Louisiana Supreme Court." [Doc. 7]. Apparently, petitioner seeks to stay the instant proceedings to permit his return to the Louisiana Courts where he can exhaust those claims previously identified as having been unexhausted. In *Rhines v. Weber*, --- U.S. ----, 125 S.Ct. 1528, --- L.Ed.2d---- (Mar. 30, 2005), the Court held that district courts have the discretion to stay rather than dismiss, mixed *habeas* petitions containing exhausted and unexhausted claims if the petitioner has good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. The undersigned has analyzed the unexhausted claims and concluded that petitioner would be unable to litigate these claims in the courts of Louisiana. Therefore, it is recommended that the Motion for Stay be denied.

## II.      Merits of the Remaining Fully Exhausted Claims

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides for prompt review and examination of *habeas* petitions by the court and further states, "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified." Citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), the Advisory Committee Notes following Rule 4 state, "...under § 2243 it is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer."

28 U.S.C. § 2254(d), as amended by § 104(d) of the Antiterrorism and Effective Death Penalty Act of 1996, provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

### A. Claims One and Two of the Original Petition (Ineffective Assistance of Counsel)

In Claim Two of the original petition for writ of *habeas corpus*, petitioner contends that his trial counsel rendered ineffective assistance because, "Petitioner was incorrectly informed by his attorney that he would be eligible to receive 'good time' parole benefits and be eligible for regular parole under plead agreement . . . Being eligible for parole and probation was main reason to enter into plea agreement."  In Claim One, petitioner contends that his trial counsel modified the written plea contract.  Claim One, in essence, offers factual support for Claim Two and does not provide a basis for relief in and of itself.[8]  Therefore, the two claims will be

---

[8] Contrary to petitioner's contention, the document referred to as a "contract" is nothing other than a letter written to petitioner by his attorney. The reason for the letter is specified in the opening sentence, "Due to the extreme seriousness of the charges for which I represent you, I am memorializing certain aspects of our representation to you by this letter." The letter continues, "As you are aware, you have been charged with aggravated rape of a juvenile under the age of 12 pursuant to LSA R.S.14:42. The penalty for that crime is life at hard labor.... The evidence which the court will have in front of it at trial includes, but is not limited to, statements from the victims and video of the minor child, all of which will indicate by oral testimony that you committed acts of fondling and sexual intercourse on the two victims.... The current offer from the District Attorney – and the final offer from the District Attorney – is to dismiss the charges against you for the molestation of a juvenile and to allow you to plea to attempted aggravated rape, rather than aggravated rape. Attempted aggravated rape is no small crime, however, and it carries with it a penalty provision which would allow you to be imprisoned for up to fifty years... and the

considered together as a claim of ineffective assistance of counsel.

The landmark case of *Strickland v. Washington*, 104 S.Ct. 2052 (1984), established a two-prong test for evaluating claims of ineffective assistance of counsel. To obtain relief, a *habeas corpus* petitioner must demonstrate not only that counsel's performance was deficient but also that the deficient performance prejudiced his defense. See *Strickland*, 104 S.Ct. at 2069. "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir.1998). When analyzing the "performance" prong, the court must take into account the reasonableness of counsel's actions in light of all the circumstances. See *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 113 S.Ct. 838, 844 (1993) (quoting *Strickland*, 104 S.Ct. at 2066). To establish prejudice for an ineffective assistance of counsel claim in the context of a guilty plea, a *habeas* petitioner "must show that there is a <u>reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial</u>." *Hill v. Lockhart*, 106 S.Ct. 366, 370 (1985)(emphasis supplied); see also *James v. Cain*, 56 F.3d 662, 667 (5th Cir.1995). If there is an insufficient showing as to either of the two prongs of inquiry – deficient performance or prejudice – the court may dispose of the claim without addressing the other prong. *Strickland*, 104 S.Ct. at 2069.

---

Judge will be free to give you anything from no time at all to the full fifty years.... It is my understanding that you do not wish to accept the plea agreement, and you wish to proceed toward trial. That it is certainly your prerogative.... However, because in my legal opinion you will likely spend the rest of your life in jail without benefit of parole, probation or diminution of sentence if you are convicted, and I believe you will be convicted, I am fully and formally spelling out the highlights of our conversation today by this letter so that at some point in the future there is a record of our discussion of these matters and my disclosure to you of the benefits and drawbacks of a plea versus a trial." [Doc. 6, Exhibits, Letter from Counsel to Petitioner].

The burden of proving either element is heavy, as "counsel is strongly presumed to have rendered adequate assistance and . . . exercise[d] . . . reasonable professional judgment," and every legal proceeding commands a "strong presumption of reliability." *Amos v. Scott*, 61 F.3d 333 (5th Cir. 1995).

Petitioner claims that he pled guilty to attempted aggravated rape based on his attorney's erroneous advice that he would be eligible to earn good time credit and ultimately obtain early release from custody. He claims that he would not have pled guilty had he known that his conviction for attempted aggravated rape would render him ineligible to earn good time credit. The state court considered petitioner's claim and denied him relief. Specifically, the state court found that petitioner's counsel had advised him in writing that "his parole eligibility was subject to the 85% rule [and that] [a]fter having been made aware of this, mover entered his plea on the same day. Thus, he pled guilty with full knowledge of his parole eligibility under the statute."

This court finds that the state court's finding that petitioner was properly informed of his parole eligibility by his attorney and that the attorney did not provide ineffective assistance of counsel is not an unreasonable factual determination or an unreasonable application of clearly established federal law. *See Jones v. Cain*, 227 F.3d 228 (5th Cir. 2000); *Williams v. Taylor*, 120 S.Ct. 1495 (2000).

## B. Claim One Amended Petition – Denial of the Right of Allocution

Petitioner claims that his "absolute right" to address the court prior to the imposition of sentence was denied. The Fifth Circuit has recently held that "the right of allocution is deeply rooted in our legal tradition and an important, highly respected right; nonetheless it is neither constitutional nor jurisdictional." *United States v. Reyna*, 358 F.3d 344, 349 (5th Cir.2004). In

*Hill v. United States*, 82 S.Ct. 468 (1962), the Court held that denial of defendant's right to allocution does not violate a right sufficiently substantial or fundamental to be cognizable in *habeas corpus*. Petitioner's claim is without support in the law.

Accordingly,

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED** as follows:

1. That Claims One and Two of the Original Petition [Doc. 1, paragraphs 5(a) and 5(b)] and Claim One of the Amended Petition [Doc. 6, Exhibits, *Habeas Corpus* Petition, paragraph 5(a)] be **DENIED AND DISMISSED** with prejudice in accordance with the provisions of Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts since it plainly appears from the face of the petition and exhibits that the petitioner is not entitled to relief; and,

2. That Claim Three of the Original Petition [Doc. 1, paragraph 5(c)], and Claims Two and Three of the Amended Petition [Doc. 6, Exhibits, *Habeas Corpus* Petition, paragraph 5(a)] be **DENIED AND DISMISSED** with prejudice for being technically exhausted but procedurally defaulted.

**IT IS FURTHER RECOMMENDED** that petitioner's Motion for Stay [Doc. 7] be **DENIED.**

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Lake Charles, Louisiana, this 10th day of January, 2006.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE